■ STEVEN SCHWARTZREICH, Appellant, v E.P.C. CARTING Co., INC., Respondent, et al., Defendant. [668 NYS2d 370] —Order, Supreme Court, Bronx County (Barry Salman, J.), entered June 18, 1997, denying plaintiff's motion to dismiss defendant E.P.C.'s libel counterclaim as barred by res judicata, unanimously reversed, to the extent appealed from, on the law, with costs, the motion granted, and the counterclaim dismissed.

In 1995, plaintiff Steven Schwartzreich was the chairman and president of the Hunts Point Cooperative Market, and defendant E.P.C. was a private commercial garbage carting company that serviced all of the Market's tenants. Plaintiff had allegedly received complaints from the tenants that E.P.C.

was subjecting them to daily fines by violating New York City recycling laws. Accordingly, on December 12, 1995, plaintiff wrote the following letter to the tenants:

"At the Board of Directors meeting held this morning, it was decided that as of 1/1/96, E.P.C. shall no longer be allowed to pick up garbage in the [Market] due to its consistent violation of City of New York recycling laws. This violation of the recycling laws made the Coop, as well as the individual tenants, subject to possible fines of up to $500 per day.

"While we realize that some of you have contracts with E.P.C., we feel that such contracts are no longer valid because of these violations and will defend and hold individual tenants harmless for any losses they may suffer because of changing to a new collection service.

"Please make arrangements to change your garbage collection service prior to 1/1/96".

By letter dated December 27, E.P.C.'s president, Diana Promuto, responded that plaintiff's allegations were false.

Thereafter, E.P.C. sued Steven Schwartzreich, Bruce Reingold (the general manager of the Market) and the Market Co-op for tortious interference with its contracts with the Market's tenants. E.P.C.'s cause of action was based on Steven Schwartzreich's December 12 letter, which allegedly contained false accusations that wrongly influenced the tenants to switch collection companies. In addition, by order to show cause, E.P.C. sought to enjoin Mr. Schwartzreich and the Market's board of directors from interfering with E.P.C.'s contracts with the tenants. Then, by "Stipulation 'So Ordered'" dated February 9, 1996 and filed with the court on March 18, 1996, E.P.C. agreed to discontinue the action against plaintiff and Bruce Reingold with prejudice, continuing it solely against the Market Co-op.

In March 1996, plaintiff commenced the instant action against E.P.C. and Diana Promuto, asserting that Ms. Promuto's letter defamed him by calling him a liar and impugning his reputation as chairman and president of the Market. Defendants asserted a libel counterclaim based solely on the December 12 letter. Plaintiff moved to dismiss this counterclaim as precluded by the dismissal of E.P.C.'s tortious interference action against plaintiff based on the same letter. Plaintiff now appeals from the court's denial of his motion. For the foregoing reasons, we conclude that the libel counterclaim should have been dismissed on res judicata grounds, pursuant to CPLR 3211 (a) (5).

New York law analyzes res judicata questions using a

transactional approach. "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357). If the party against whom res judicata is invoked had a full and fair opportunity to litigate the claim in a prior proceeding based on the same transaction, but did not raise it therein, he will be barred from raising it in a subsequent action (*Browning Ave. Realty Corp. v Rubin*, 207 AD2d 263, 264-265, *lv denied* 85 NY2d 804). Moreover, a stipulation of discontinuance with prejudice has the same preclusive effect as a judgment on the merits (*Nottenberg v Walber 985 Co.*, 160 AD2d 574, 575). Generally, a set of facts will be deemed a single "transaction" for res judicata purposes if the facts are closely related in time, space, motivation, or origin, such that treating them as a unit would be convenient for trial and would conform to the parties' expectations (*Smith v Russell Sage Coll.*, 54 NY2d 185, 192-193).

Here, the tortious interference claim and the libel counterclaim arose out of precisely the same facts, namely plaintiff's December 12 letter. E.P.C. disingenuously argues that the discontinued claim was based on the paragraphs warning the tenants that their contracts with E.P.C. were invalid, whereas E.P.C.'s current libel counterclaim is based on the paragraph charging E.P.C. with violations of the recycling laws. Such an interpretation contradicts the plain meaning of the letter, since the paragraphs concerning invalidation of the contracts would make no sense if read in isolation from the preceding paragraph explaining *why* the contracts should not be honored. In addition, if the defendant prevailed on the libel counterclaim, actual damages would be based on the loss it suffered when the plaintiff's defamatory statements allegedly induced the tenants to breach their contracts. In short, E.P.C.'s tortious interference and libel claims clearly arise out of the same transaction, and so res judicata should apply.

E.P.C. further argues that it did not have a proper opportunity to present the libel claim in its order to show cause, because it wanted to focus the court's attention on enjoining the invalidation of the contracts, which was a more immediate danger. If this is true, E.P.C. must accept the consequences of its choice of litigation strategy. The res judicata doctrine would be meaningless if a party could split its cause of action merely to ensure that each alternate theory of recovery received sufficient individualized attention. Having chosen to concentrate on tortious interference in the previous action, without taking

steps to preserve any potential libel claim, E.P.C. may not raise it separately here. Concur—Rosenberger, J. P., Wallach, Rubin, Williams and Tom, JJ.